UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MITCHELL G.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,<br><br>　　　　Defendant. | Civil Action<br>No. 20-15241 (CPO)<br><br>**OPINION** |

**Appearances:**

Alan H. Polonsky
POLONSKY AND POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

　　*On behalf of Plaintiff Mitchell G.*

Heather Anne Benderson
SOCIAL SECURITY ADMINISTRATION
300 Spring Garden Street
Philadelphia, PA 19123

　　*On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Mitchell G.'s[1] appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court AFFIRMS the Acting Commissioner's decision

## II.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal.

### A.   Administrative History

Plaintiff protectively filed an application for supplemental security income on August 28, 2017, alleging disability since his birth in 1999. (AR 158, 174). These claims were denied initially and again upon reconsideration. (AR 76, 92). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") at which he appeared and testified on September 18, 2019. (AR 30). After the hearing, the ALJ found that Plaintiff was not disabled in a decision dated November 4, 2019. (AR 15). The Appeals Council denied his request for review on September 23, 2020. (AR 1–5). Plaintiff now appeals to this Court. (Compl., ECF No. 1).

### B.   Plaintiff's Background and Testimony

Plaintiff is a twenty-year-old man who lives with his mother and fourteen-year-old sister. (AR 34). Plaintiff has no past relevant work history and currently attends Rowan College part time. (AR 34). He testified that he takes three classes per semester, and spends four hours on campus for class two days per week. (AR 35, 40). In high school, Plaintiff had an IEP, but attended regular

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

2

academic classes and achieved B's and C's. (AR. 38). He had a few friends, but had not seen them very often since graduation. (AR 38). During the summer, Plaintiff would play video games online with his friends and occasionally dog sit for family friends. (AR 42–43). Plaintiff testified that he felt unable to work because he became stressed in crowds of more than twenty people and he feared making errors on the job. (AR 35).

Plaintiff's mother, Carla Guerreiro, testified that Plaintiff became overwhelmed easily, had difficulty in social situations, and struggled to make friends. (AR 47–52). Ms. Guerreiro drives Plaintiff everywhere because he does not have a driver's license, and does not take the bus due to his struggles with unpredictable things. (AR 49–50).

In an Adult Function Report submitted with his application, Plaintiff reported that he requires reminders to groom himself and take his medication, but that he prepares his own simple meals—such as sandwiches—daily, brings his laundry basket to the laundry room, and takes out the trash weekly. (AR 187, 189–190). Plaintiff listed his activities as reading about history, playing videogames, watching television, and using the computer. (AR 190). Plaintiff responded in the negative to the question of "[d]o you have any problems getting along with family, friends, neighbors, or others?" (AR 191).

        **C.**    **Relevant Medical Evidence**

The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

        1.   <u>Natalie C. Eisenhower, Psychiatric Nurse Practitioner</u>

On December 6, 2017, Plaintiff underwent an initial psychiatric evaluation with Natalie C. Eisenhower, a psychiatric nurse practitioner at New Age Behavioral. (AR 326). Plaintiff reported that he was diagnosed with autism at age six and had been "in and out of therapy" since that time.

(AR 326). Plaintiff identified a lot of changes over the past three months, including starting college, his parents' divorce, and moving to a new house. (AR 326). He reported feeling overwhelmed and anxious at school, although he was doing well and achieving good grades. (AR 326).

On a mental status examination, Nurse Eisenhower noted that Plaintiff was well groomed, his attitude was cooperative, and his behavior was appropriate with intermittent eye contact. (AR 327). His motor behavior was unremarkable, his mood was neutral with a congruent affect, his thought process was organized, his perceptions were normal, and he was alert and oriented. (AR 327). Plaintiff's judgment and insight were fair, and his cognition and intellectual functioning were average. (AR 327). Nurse Eisenhower diagnosed autism spectrum disorder, and she prescribed Lexapro to treat Plaintiff's anxiety and mood. (AR 328).

On January 24, 2018, Plaintiff reported to Nurse Eisenhower that since he began taking Lexapro he was "not stressing as much," was feeling less overwhelmed, was doing well in school, had a slight improvement in his mood, and had been socializing more with friends. (AR 324). Nurse Eisenhower noted that on March 21, 2018 Plaintiff reported that he continued to stress less about school, although there were still times when he felt overwhelmed and anxious, and that he had been socializing with friends. (AR 322). On August 2, 2018, Plaintiff reported that he continued to have times when he felt overwhelmed and anxious however he was doing well in school and taking the summer off. (AR 320). Plaintiff reported that his mood was "mostly good" and Nurse Eisenhower increased Plaintiff's dose of Lexapro. (AR 320).

On October 11, 2018, Nurse Eisenhower noted that Plaintiff reported that his anxiety had improved, school was going well, his mood was good, and he was socializing with friends. (AR 317). On April 9, 2019, Plaintiff reported that his anxiety had been stable and he was doing well at school. (AR 318). He told Nurse Eisenhower that he was helping his mother with household

chores, his mood was good, and he was socializing with friends through text messages. (AR 318). In the final progress note on July 9, 2019, Plaintiff reported that his anxiety had been slightly elevated due to his upcoming Social Security hearing but that he had started going to the gym and was dog sitting for the summer. (AR 314).

### 2. Lawrence G. Mintzer, Ph.D.

On November 8, 2017, Plaintiff was examined by Lawrence G. Mintzer, Ph.D. for a consultative psychological evaluation. (AR 301). Plaintiff's mother reported that he was diagnosed with autism, was treated by psychologist Tara Calafiore, Ph.D in October 2017 but was not currently taking any medication. (AR 301–02).

On a mental status examination, Dr Mintzer noted Plaintiff was well-oriented but unable to name the town in which he lived. (AR 302). Plaintiff was adequately groomed, his motor activity was appropriate and relaxed, his speech and mood were within normal limits, and his affect was somewhat constricted. (AR 302–03). His thought processes were goal oriented, and there were no indications of delusional thinking. (AR 303). Dr Mintzer noted that Plaintiff denied any problems with depression, but his mother stated that he had been depressed lately because of recent changes at school and his parents' divorce. (AR 303). Plaintiff's abstract thinking was fair to poor, his fund of general knowledge was fairly good, his capacity to perform simple calculations was good, and his concentration was fair. (AR 303). His recent memory was good, and his immediate retention and recall were fair. (AR 303). His insight was poor. (AR 303). Dr. Mintzer estimated Plaintiff's intelligence to be in the low average range. (AR 303).

Dr. Mintzer diagnosed autism spectrum disorder, unspecified neurodevelopmental disorder, and unspecified depressive disorder. (AR 303). He opined that Plaintiff's "limitations are

5

moderate to severe in degree," and opined that Plaintiff was not able to manage his personal funds in a competent manner. (AR 303–04).

### 3. Tara Calafiore, Psy.D.

Plaintiff was treated by Dr. Tara Calafiore, Psychologist, twice a month since October 11, 2017. (AR 306, 312). She treated him with behavioral therapy and opined that he met the criteria for a diagnosis of autism spectrum disorder. (AR 312).

Dr. Calafiore offered four opinions in the Social Security Disability Psychiatric Report she completed in 2017. First, she stated that Plaintiff was limited in understanding and memory, noting that he "struggles with understanding complex concepts." (AR 308). Second, she opined that Plaintiff was limited in sustained concentration and persistence, noting that Plaintiff "struggles with social interactions and deviating from routine." (AR 308). Third, for social interaction, Dr. Calafiore opined that Plaintiff was limited, noting that "social interactions are impaired resulting in anxiety and inability to problem solve." (AR 308). Finally, Dr. Calafiore opined that Plaintiff was limited in adaptation, noting that Plaintiff "struggles with changes in routine." (AR 308). Dr. Calafiore added that at Plaintiff's most recent visit he was alert and oriented, his appearance was appropriate, his concentration was intact, but his speech was repetitive at times and his memory was poor. (AR 310).

On September 1, 2019, Dr. Calafiore completed a Mental Medical Source Statement. (AR 342–45). She opined that Plaintiff's limitations would preclude job performance in "15% to more of an 8 hour workday" in the following areas: (1) understanding and remembering detailed instructions, (2) maintaining attention and concentration for two hour periods, (3) making simple work-related decisions, (4) completing a normal workday and workweek without interruptions from psychologically based symptoms/performing at a consistent pace without an unreasonable

number and length of rest periods, (5) responding appropriately to changes in the work setting, (6) traveling in unfamiliar places or using public transportation, and (7) setting realistic goals or making plans independently of others. (AR 342–45).

    4. <u>Cheryl Sanford, State Agency Psychologist</u>

On December 11, 2017, state agency psychologist Cheryl Sanford reviewed the record and opined that Plaintiff was moderately limited with regard to (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace and (4) adapting or managing oneself. (AR 68). Noting that Plaintiff attended community college and was taking three classes in a special needs program, Dr. Sanford opined that Plaintiff maintained the ability to understand, remember, and execute two-step instructions and sustain concentration, persistence, and pace for simple, routine tasks. (AR 71). Dr. Sanford additionally noted that the consultative examiner, Dr. Mintzer, reported unremarkable findings and noted that Plaintiff presented as goal-directed with a normal mood and a somewhat constricted affect. (AR 71).

    D. **The ALJ's Decision**

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 23); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 28, 2017, the application date. (AR 17). At Step Two, the ALJ found Autism Spectrum Disorder to be a severe impairment. (AR 17).

At Step Three, the ALJ found that Plaintiff's impairment did not meet or medically equalthe severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (R. 15). Specifically, the ALJ reviewed the severity of Plaintiff's mental impairments to see if they met the

7

Listing for Autism Spectrum Disorder, Listing 12.10, he addressed each Paragraph B criteria, finding that Plaintiff had "moderate" limitations in each, resulting in a finding that Plaintiff did not meet the severity of Listing 12.10. (AR 18).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels but limited to "simple, routine tasks in a nonpublic setting with no teamwork." (AR 18). Based on the testimony of the Vocational Expert ("VE"), the ALJ found that Plaintiff could perform the jobs of cleaner, laundry laborer, or bottling line attendant, and that a significant number of such jobs existed in the national economy. (AR 23).

### III.   LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account

the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]"

> That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## IV. **DISCUSSION**

On appeal, Plaintiff asserts that the ALJ's findings in Step Two and Step Four were not supported by substantial evidence and that the job incidence numbers used in determining that Plaintiff could perform work in the national economy "bear no relationship to reality." (Pla. Br., ECF No. 11 at 29). For the following reasons, the Court finds that the ALJ's conclusions are supported by substantial medical evidence in the record and will affirm the final decision of the Acting Commissioner.

**A. The ALJ's Step Three Finding That Plaintiff Did Not Meet Listing 12.10 Is Supported By Substantial Evidence.**

Plaintiff argues first that the ALJ's decision at Step Three—that Plaintiff's impairment did not meet Listing 12.10 (Autism Spectrum Disorder)—is not supported by substantial evidence. The Court disagrees.

Plaintiff bears the burden of providing objective medical evidence to support a disability finding. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "To meet the requirements of a listing, [a plaintiff] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d) (2017). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990)) (quotations omitted).

Plaintiff challenges the ALJ's discussion of the Paragraph B criteria under which a plaintiff must show an extreme limitation of one area or a marked limitation of two areas. 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.10.[2] ALJs need not use any magic words or particular format to present their analysis; their opinions should be read "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Moreover, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). The ALJs' decisions need only to demonstrate that there is substantial evidence to support their conclusions. *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x. 771, 774 (3d Cir. 2004).

Here, the ALJ addressed each Paragraph B criteria, finding that Plaintiff had "moderate" limitations in each, resulting in a finding that he did not meet the severity of Listing 12.10. (AR

---

[2] The Listings were revised and effective January 17, 2017. *See* 81 Fed. Reg. 66138-01, n.1 (Sept. 26, 2016); *accord Naples v. Comm'r of Soc. Sec.*, No. 17-267, 2019 WL 1434215, at *1 n.1 (W.D. Pa. Mar. 2019).

11

18). Plaintiff claims that the evidence before the ALJ supported a finding of "marked" or "extreme" for (1) the ability to interact with others and (2) the ability to adapt or manage oneself. (Pla. Br., ECF No. 11 at 19).

Discussing Plaintiff's moderate limitations in his ability to interact with others, the ALJ noted that—despite Plaintiff's alleged difficulty with social activities—"he was able to spend time with family and friends, deal appropriately with authority figures, and live with others." (AR 18, 191, 193). Plaintiff also responded in the negative to the question of "[d]o you have any problems getting along with family, friends, neighbors, or others?" (AR 191). The ALJ added that the medical evidence showed that Plaintiff's health care providers describe him as "pleasant and cooperative, and appear[ing] comfortable during appointments." (AR 18, 302, 327).

As for Plaintiff's ability to adapt or manage himself, the ALJ found Plaintiff had moderate limitations, citing "appropriate grooming and hygiene, no problem getting along with medical providers or staff, a normal mood and affect, and no problems with temper control." (AR 18). This finding is confirmed by the notes of medical providers which consistently document same. (AR 302, 314, 320, 322, 324, 327).

Plaintiff cites to various medical evidence in the record to support his contention that the elements should be marked. He is, essentially, asking the Court to reweigh the evidence pertaining to the Paragraph B criteria to reach a conclusion different than that of the ALJ. The Court declines to do so and notes that "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). Finding that the ALJ sufficiently discussed the paragraph B criteria and supported her conclusions with medical evidence in the record, Plaintiff's argument fails.

### B. The ALJ's Step Four RFC Finding Is Supported By Substantial Evidence.

Plaintiff alleges three errors in the ALJ's determination of Plaintiff's RFC: (1) that the ALJ failed to properly consider Plaintiff's mother's testimony; (2) that the ALJ failed to properly consider the testimony of Dr. Mintzer; and (3) that the ALJ failed to properly consider the testimony of Nurse Eisenhower. The Court finds all three arguments unpersuasive and will address each in turn.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but limited to "simple, routine tasks in a nonpublic setting with no teamwork." (AR 18).

In determining an individual's residual functional capacity in step four, the ALJ must consider all relevant evidence—including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121. The ALJ's finding must "be accompanied by a clear and satisfactory explanation of the basis on which it rests," sufficient for reviewing court to determine if the decision is supported by substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir.1981). The ALJ, however, is not required "to make reference to every relevant treatment note in a case where the claimant, . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. When presented with conflicting evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer*, 186 F.3d at 429

13

(citing *Stewart v. Sec'y of Health, Educ., & Welfare*, 714 F.2d 287, 290 (3d Cir.1983)) ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

The Court will review Plaintiff's first two challenges together—the allegations that the ALJ failed to properly consider the testimony of Plaintiff's mother and Dr. Minzter—since their testimony is intertwined and the ALJ's reasoning for giving it little weight is the same.

The ALJ is required to consider "all relevant evidence in the case record." SSR 06-03p, 2006 WL 2329939, at *4; *see also* 20 C.F.R. § 416.920b. This includes evidence from "non-medical sources." 20 C.F.R. § 416.913(a)(4) (2017). Plaintiff's mother would qualify as an "other source," meaning a non-medical source whose relationship with the plaintiff is not based on a "professional" relationship. SSR 06–03p, 2006 WL 2329939, at *2. ALJ's are "are not required to articulate how [they] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

In this case, to the extent Plaintiff argues that it was error for the ALJ to not explicitly state whether she found Plaintiff's mother's testimony credible, the ALJ is not required to do so. *See* 20 C.F.R. § 404.1520c(d). It is clear, however, that the ALJ considered Plaintiff's mother's testimony as she summarized it individually and within her discussion of Dr. Minzter's testimony. (AR 19–20). In reciting the testimony of Dr. Mintzer, the ALJ noted that "[t]he claimant's mother provided most of the information," before extensively listing what Plaintiffs' mother had reported to the doctor. (AR 20). The ALJ identified at least once where Plaintiff's mother's report conflicted with the testimony of Plaintiff himself, for example, "[w]hen asked if he had any problems with depression, the claimant reported 'I don't think so,' but his mother stated that he was having problems due to recent life changes." (AR 20).

In finding Dr. Mintzer's testimony unpersuasive, the ALJ found it inconsistent with the medical record, especially the treatment notes from Nurse Eisenhower. (AR 20). The ALJ clearly

14

based her reasoning and decision primarily on the medical exhibits, relying heavily on the progress notes of Nurse Eisenhower, as is within her prerogative. This Court, sitting in review, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). There is sufficient evidence in the record to support the ALJ's findings, namely medical records that showed Plaintiff as well-oriented, goal-driven, with well intact memory and cognition, (AR. 20–21, 71, 303, 327), a psychiatric evaluation that revealed Plaintiff to have an average IQ, (AR 280), and a mental status examination by Dr. Mintzer himself who reported unremarkable mental status aside from poor social judgment and insight, (AR 302–03).

Turning to Plaintiff's third challenge, the Court finds that the ALJ also properly considered and limited the weight of Nurse Eisenhower's testimony. The ALJ compared Nurse Eisenhower's opinion that Plaintiff would likely be off task for ten to fifteen percent of the day in many areas to her own treatment notes to find that her opinions were unsupported. (AR 20). Nurse Eisenhower's mental evaluation of Plaintiff marked him as well groomed, cooperative, and organized in his thought process. (AR 327). His perceptions were normal, and he was alert and oriented. (AR 327). Plaintiff's judgment and insight were fair, and his cognition and intellectual functioning were average. (AR 327). Nurse Eisenhower's treatment notes repeatedly reported Plaintiff improving on his medications and improving his socialization skills. (AR 314, 317, 318, 320, 322, 24). Plaintiff points to no specific evidence that contradicts these reports or the ALJ's findings, and as such, the Court can find no error in the ALJ's evaluation of this medical evidence.

The ALJ concluded by noting that "[a]lthough [Plaintiff] may be limited in social interactions with others, or being in crowded areas, and have some diminished judgment and insight, he is not precluded from all work activity," (AR21), and did in fact incorporate those

limitations into Plaintiff's RFC, (AR 18, 20–22). As such, the Court finds the ALJ's RFC determination to be based in sufficient medical evidence in the record.

### C. The ALJ's Step Five Finding That Plaintiff Was Capable Of Performing A Significant Number Of Jobs In The National Economy Is Supported By Substantial Evidence.

Plaintiff's argument regarding the VE testimony is two-fold. First, he argues that the erroneous RFC resulted in an invalid determination as to the work Plaintiff could conduct, and second, he argues that "the job incidence numbers of the vocational testimony bear no relationship to reality." (Pla. Br., ECF No. 11 at 29). The Court finds both of these arguments without merit.

First, because the Court finds that the ALJ's RFC analysis and conclusion were supported by substantial evidence, *see infra* Section B, Plaintiff's initial argument fails. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) ("[O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.").

Second, Plaintiff's challenge to the VE's determination of the number of jobs in the national economy is unpersuasive. Plaintiff concedes that "there are likely significant number of such jobs, but not these numbers of jobs" and only challenges the numbers for two of the three jobs, accepting that the number of jobs for the cleaner job is likely accurate. (Pla. Br., ECF No. 11 at 30). In other words, Plaintiff brings no independent challenge to the VE's testimony that Plaintiff could perform the job of cleaner that is widely available in significant numbers in the national economy.

SSA regulations provide that work exists in the national economy when there is a significant number of jobs in *one or more* occupations that an individual can perform. 20 C.F.R. §

416.966(b) (emphasis added). As Plaintiff has conceded that the VE accurately testified to one job that Plaintiff could perform that was widely available in the national economy, his argument has already failed. *Penrose v. Comm'r of Soc. Sec.*, No. 20-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy.").

While the Court could end its analysis here, it will also note that the law does not permit Plaintiff to raise new information on appeal unless there is good cause as to why it was not raised before the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (citing *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984)). To the extent Plaintiff attempts to challenge the VE's testimony based on information from "JobBrower Pro," such evidence shall not be considered as it was not before the ALJ. Further, Plaintiff conceded to the VE's qualifications had an opportunity to question the VE at his hearing—and present contradictory evidence regarding the number of jobs available in the national economy—but he did not. *See Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105 (3d Cir. 2016) (rejecting a challenge to VE testimony where plaintiff "had the opportunity [at the hearing] to challenge the vocational expert's methodology and status as an expert, or to offer conflicting testimony regarding specific job numbers available in the region" but "[h]e simply failed to do so.").

For all of these reasons the ALJ's determination that there were jobs available in the national economy within Plaintiff's RFC was supported by substantial evidence in the record and Plaintiff's challenges are unsuccessful.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court will affirm the final decision of the Acting Commissioner. An appropriate Order will be entered.

Date:<u> April 22, 2022 </u>

                                      <u> /s/ *Christine P. O'Hearn*   </u>
                                      **Christine P. O'Hearn**
                                      **United States District Judge**